

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ADW:MRM/SMS/KPO  
F. #2025R00053

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 13, 2026

<u>By ECF</u>

The Honorable William F. Kuntz, II
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Dimitriy Nezhinskiy</u>
              <u>Criminal Docket No. 25-40 (WFK)</u>

Dear Judge Kuntz:

      The government respectfully submits this sentencing memorandum in advance of defendant Dimitriy Nezhinskiy's sentencing hearing, which is currently scheduled for March 23, 2026, at 12:00 p.m. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the advisory United States Sentencing Guidelines ("Guidelines") range of 46 to 57 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

I.      <u>Background</u>

      Nezhinskiy's conduct is detailed in the Probation Department's ("Probation's") Presentence Investigation Report, dated December 4, 2025 ("PSR"), the indictment in this case, ECF No. 1 (the "Indictment"), and the government's February 4, 2025 letter in support of detention, ECF No. 7 ("Detention Letter"). Nezhinskiy and his co-defendant, Juan Villar, conspired to operate a stolen property purchasing business out of a pawn shop. Together, the defendants conspired with one another and others to receive and purchase stolen property, including pieces of jewelry, watches, designer handbags, sports memorabilia and other assorted luxury items that had been stolen outside of the state of New York and transported into New York.

      A.      <u>The Defendant's Conspiracy to Traffic Stolen Property</u>

      Between November 2020 and January 2025, Nezhinskiy and Villar regularly served as "fences" for South American criminal groups who engaged in crime tourism, traveling across the United States to commit burglaries, typically targeting luxury goods from high-end stores and neighborhoods, including the homes of prominent athletes. PSR ¶ 5. Nezhinskiy and Villar purchased stolen property from these thieves. PSR ¶ 8. In addition to fencing stolen foods, Nezhinskiy and his co-conspirator coached thieves on what types of items to target and advised

thieves to steal items outside of New York, making it easier for Nezhinskiy and Villar to resell stolen items. PSR ¶ 6. Also, on several occasions between 2022 and 2023, an undercover law enforcement officer (the "UC") met with Nezhinskiy and made explicit representations to him that the goods he was selling to Nezhinskiy had been stolen. For example, in one meeting, before Nezhinskiy purchased a leather handbag from the UC, the UC told Nezhinskiy that her boyfriend "gets the stuff, he steals it, and I sell it for them." Similarly, during another meeting, the UC told Nezhinskiy, "they take some of the stuff at night, they kind of get whatever is laying around, leftover laying around in the back room."

Throughout the scheme, Nezhinskiy served as the main point of contact for the thieves and at times met them at other locations in order to avoid detection. Id. ¶ 9. The government's investigation linked Nezhinskiy and Villar's operation to at least five separate burglary crews that committed theft crimes across the United States between 2020 and January 2025. Id. ¶ 11. Nezhinskiy and Villar's business, purchasing stolen property from these crews for cash, provided an essential market for the stolen goods, perpetuating the dangerous criminal activities of the burglary and theft crews. Detention Letter at 2.

On February 4, 2025, Nezhinskiy was arrested at his home in New Jersey and Villar was arrested at the pawn shop. PSR ¶¶ 12, 17. Law enforcement executed a search warrant at the pawn shop and located large quantities of suspected stolen property, including dozens of high-end watches, pieces of jewelry, and sports memorabilia. Id. ¶ 12. Among them, law enforcement recovered a 1988 Winter Olympics commemorative ring that was traced to a home burglary in Colorado in November 2023. Law enforcement also recovered large quantities of luxury goods and clothing, including high-end handbags, wine, sports memorabilia, jewelry and art from storage units rented by Nezhinskiy and Villar. Id. The government estimates that between December 2020 and February 2023, Nezhinskiy and Villar received at least $2,595,789.17 worth of stolen property. Id. ¶ 13

B.     Charges and Guilty Plea

On January 30, 2025, a grand jury in the Eastern District of New York returned an indictment, charging Nezhinskiy and Villar with four counts related to their respective roles in the Manhattan-based stolen property purchasing operation. Specifically, the defendants were charged in Count One with conspiring with one another, and others, to receive and purchase stolen property, including jewelry, watches, handbags and assorted luxury items that had been stolen outside of the state of New York and transported into New York. Count Two charged both Nezhinskiy and Villar with the substantive offense of receiving stolen property on one occasion in November 2020. Only Nezhinskiy was charged in Counts Three and Four with the substantive offenses of receiving stolen property on one occasion in August 2022 and one occasion in August 2023, respectively. See Indictment ¶¶ 1-5. Nezhinskiy and Villar were arrested on February 4, 2025. Nezhinskiy was ordered detained by this Court on February 7, 2025 and has remained in custody. ECF Nos. 21 and 23; ECF Minute Entry (Feb. 7, 2025).

On July 18, 2025, Nezhinskiy pleaded guilty before this Court, pursuant to a plea agreement, to Count One of the Indictment. PSR ¶ 1. On June 16, 2025, Villar pleaded guilty before this Court, pursuant to a plea agreement, to Count One of the Indictment. On February 18, 2026, this Court sentenced Villar to 46 months' imprisonment. See ECF Nos. 83–84.

2

II. <u>Applicable Law</u>

The Supreme Court has instructed that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." <u>Id.</u> at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing a sentence, a court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. <u>See</u> 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The sentencing court must also "remain cognizant of them throughout the sentencing process." <u>Gall</u>, 552 U.S. at 50 n.6.

III. <u>Guidelines Calculation</u>

Probation calculated the defendant's offense level in the PSR (¶¶ 23-35) as set forth below:

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(2))) | | 6 |
| Plus: | Over $1.5M Loss Amount (U.S.S.G. § 2B1.1(b)(1)(I)) | +16 |
| Plus: | Ten or More Victims (U.S.S.G. § 2B1.1(b)(2)(A)(i)) | +2 |
| Plus: | In the Business of Receiving Stolen Property (U.S.S.G. § 2B1.1(b)(4)) | +2 |
| Plus: | Sophisticated Means (U.S.S.G. § 2B1.1(b)(10(C)) | +2 |

    Less:  Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a) and (b))  -3

    Total:                                        <u>25</u>

The total offense level calculated by Probation is 25, which, based on a Criminal History Category of II (id. ¶¶ 35, 44), carries an advisory Guidelines range of 63 to 78 months' imprisonment, and an effective Guidelines range of 60 months' imprisonment, id. ¶ 87.[1]  The defendant agrees with Probation's calculation of the Guidelines range.  See Def.'s Sentencing Memorandum, ECF No. 86, at 4.

    In the parties' plea agreement, the parties agreed with the enhancements included in the PSR, but also estimated that the defendant qualified as a zero-point offender, leading to a total offense level of 23.  In addition, the parties also estimated the defendant's Criminal History Category as I.  The government agrees with the calculation by Probation. However, the government nevertheless advocates for the Guidelines range set forth in the plea agreement of 46 to 57 months' imprisonment.

IV.  <u>A Guidelines Sentence Is Appropriate</u>

    The government respectfully submits that a sentence within the advisory Guidelines range as calculated in the plea agreement of 46 to 57 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.  The need for such a sentence is underscored by the sentencing factors articulated in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and both specific and general deterrence.

    The defendant's criminal conduct was serious and directly enabled others to engage in conduct that created a substantial risk to human life.  His criminal conduct created a marketplace for dangerous residential burglaries and retail thefts.  By creating a cash-based marketplace for stolen items, these defendants motivated individuals to engage in a nationwide series of burglaries and thefts.  The defendant profited from intrusion on victims' homes and businesses.  The defendant was not a passive participant in the conspiracy.  Instead, Nezhinskiy and Villar schemed with thieves to target specific types of property and items out of New York State to facilitate sales and maximize their profits.

    The government respectfully submits that the range of 46 to 57 months' imprisonment here accurately reflects the defendant's culpability, the moral seriousness of his crime, and the need for deterrence.  The losses here were devastating and were borne by a discernable number of real victims.  These were victims whose homes were broken into and whose valuables and mementos were stolen.  The losses were directly enabled by the defendant's actions to benefit himself and were the foreseeable consequences of those actions.

---

[1]  The charge to which the defendant pleaded guilty, a violation of 18 U.S.C. § 371 (Count One), has a five-year statutory maximum, resulting in an effective Guidelines range of 60 months' imprisonment.  See PSR ¶ 87.

4

In addition, a significant sentence here is crucial for specific and general deterrence. With respect to specific deterrence, the instant offense is only the latest in a pattern of criminal conduct. See PSR ¶¶ 36–43. The defendant has prior convictions for possession of forged checks, shoplifting, possession of narcotics, and, most significantly, robbery. See id. The defendant and a co-conspirator forcibly stole a gold necklace and wedding ring from a female victim before fleeing, a crime for which he was sentenced to 42 months' imprisonment. See id. ¶ 41. Despite that prior term of incarceration, the defendant went on to commit the instant offense. A Guidelines sentence is therefore necessary to deter this defendant from continuing to engage in criminal conduct.

With respect to general and specific deterrence, without the criminal marketplace Nezhinskiy and Villar operated, residential burglaries would not be as lucrative. The theft groups with which the defendant partnered were often not part of a sophisticated operation, but rather disaggregated groups or individuals working in loose connection. Through the defendant's marketplace, they were able to easily sell their stolen wares. The defendant provided organization and guidance to the burglary crews, and a significant sentence here is necessary to achieve general deterrence to dissuade anyone from stepping into his shoes.

V.      Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 46 to 57 months' imprisonment.

>Respectfully submitted,
>
>JOSEPH NOCELLA, JR.
>United States Attorney
>
>By:    /s/_____
>Katherine P. Onyshko
>Sean M. Sherman
>Michael R. Maffei
>Assistant U.S. Attorneys
>(718) 254-7000

cc:    Clerk of Court (WFK) (By ECF)
       Defense Counsel (By ECF and Email)
       United States Probation Officer (By Email)